*Wales* for plaintiff.

*Gilpin* for defendant.

—➤➤➤●●●《《《●—

## EDWARD T. BAILEY *vs.* SAMUEL M'DOWELL.

The printed statute laws of other states are not evidence here, without other authentication.

*Query.* If lottery tickets be properly chargeable in a book account.

ASSUMPSIT for goods, wares, &c., and for lottery tickets sold and delivered, &c. Pleas non-assumpsit; payment; set off, and the act of limitations.

The plaintiff was a lottery broker, and kept a duly licensed office in the city of Wilmington. He claimed $229 05 balance on account for lottery tickets sold to defendant in lotteries authorized by the states of Virginia, New York, North Carolina and Delaware. To prove this authority, he offered the printed laws of Virginia, New York and North Carolina, obtained from the office of the secretary of state of this state, purporting to be authentic laws, and published by authority; but not having any other authentication.

They were objected to by *Bayard*, for defendant, who insisted that nothing but an exemplified copy of a foreign law could be evidence.

*Wales* contra, cited 1 *Dallas* 458, 462; *Chief Jus. M'Kean's* opinion for admitting the pamphlet laws of other states without further authentication. 4 *Cranch* 388, *per Chief Jus. Marshall.* A law of Virginia permitted to be read in the District of Columbia, from the statute book. 1 *Peter's Rep.* The laws of a foreign country, promulgated by the executive of this country, are evidence. I am not aware of any decision in this state, but the practice has been, to admit the laws of Pennsylvania and other neighboring states as they stand printed in the statute book. This custom is evidence of what the law has been considered to be. A contrary practice would be extremely inconvenient and expensive. We are peculiarly situated in reference to our sister states, which cannot be considered strictly as foreign to each other.

*Booth.*—The evidence offered, is the printed volumes of the laws of Virginia, New York and North Carolina, taken from the office of the secretary of state of this state where, in the course of the interchange of laws, they have been received from the governors of those states respectively. The origin and keeping of these laws therefore, confirm the evidence of their authenticity. The act of congress of 26th May 1790, prescribing the form of authenticating state laws (by the seal of state) does not preclude other forms known to the common law. If verified according to that act, they must be received in evidence; they may be received though authenticated differently. A sworn copy, for instance, would undoubtedly be evidence. 14 *Com. Law Rep.* 186.

*Bayard* in reply. The act of congress was passed with a view to give a certain mode of authenticating the laws of the several states, *because* the mere printed pamphlet was not evidence. They could be considered as no more authentic by being printed, than if there were so many written copies purporting to be the session acts, nor could they, any more than these, be received in evidence to prove what those acts are. And the admission of them without proof, would be extremely dangerous, not only as violating the rules of the common

law, but as opening the door to fraud and imposition. The case cited from *Cranch* does not apply, because the laws of Virginia are in force in that part of the District of Columbia in which the court sat. In the case from *Dallas,* judge M'Kean did not seem to consider himself bound by the precedents.

The common law does not provide for the proof of statutes, otherwise than by anthenticated copies. The courts of this state have always followed the common law rules of evidence, unless they have been altered by our own statute laws; and there has been no legislation in our state on this subject. The legislation by congress has provided a rule, but a different one from that followed in this case. And if the law offered was sufficiently authenticated, it could not be given in evidence, without being pleaded and set out in the narr. 1 *Stark. Ev.* 163.

*By the Court.*

CHIEF JUSTICE CLAYTON.—These acts have frequently been admitted as evidence of the laws of other states, but it has been without objection, and by a sort of general agreement, to prevent trouble and save expense. Their sufficiency as a matter of evidence is now questioned, we believe for the first time; and, whatever the inconvenience, we must give it as our opinion, that they are not evidence. If the inconvenience and expense of procuring these laws to be properly authenticated, shall be thought to outweigh the danger of admitting them in the usual printed form, without further authentication, it will be for the legislature to change the rules of evidence in this respect. There are but two modes of authenticating statutes by the common law; by sworn copies, and by attestation under seal. One of these must be followed, or the legislature must provide another. It is not apparent to the court that these lottery laws are public laws. Prima facie they would probably be taken as private laws, as they are generally passed on private application, and for some specific purpose.

The chief justice further suggested his doubt whether lottery tickets were chargeable in account, as the subject of merchandize, and the delivery proved by the book and oath of the broker. The case of *Bailey* vs. *M'Dowell,* 1 *vol.* 346, may therefore be considered as questioned.

The plaintiff was nonsuited.

*Wales* and *Booth* for plaintiff.
*J. A. Bayard* for defendant.